UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-20104-ALTMAN

**MARK HEBERT**,

    *Petitioner*,

v.

**STATE OF FLORIDA**,

    *Respondent.*

_____/

## ORDER

Our Petitioner, Mark Hebert, says that he'd "served 1025 days of his sentence while on conditional release" before the Florida Commission on Offender Review found that he violated the terms of his conditional release, revoked all the gain-time he'd earned, and remanded him back to the custody of the Florida Department of Corrections. Petition [ECF No. 1] at 5. Rejecting Hebert's contention that this procedure was unconstitutional, we **DENY** his Petition.

### THE FACTS

Between January 3, 2003, and January 17, 2003, the State Attorney for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, charged Hebert with burglary of an occupied dwelling, third-degree grand theft, two counts of aggravated assault on a law enforcement officer, aggravated fleeing and eluding, leaving the scene of an accident involving property damage, and driving with a suspended license. *See* F02-036885 Information [ECF No. 10-2] at 4–7; F02-036882 Information [ECF No. 10-3] at 4–7; F02-036883 Information [ECF No. 10-4] at 4–7. A state jury found Hebert guilty of all seven offenses, and the state court imposed a total sentence of twenty years—with a mandatory-minimum term of fifteen years—because of Hebert's status as a "prison releasee offender"

and a "habitual felony offender." *See* F02-036885 Judgment [ECF No. 10-2] at 8–14; F02-036882 Judgment [ECF No. 10-3] at 8–14; F02-036883 Judgment [ECF No. 10-4] at 8–14.

On December 10, 2019, the Florida Commission on Offender Review ("Commission") released Hebert from the custody of the Florida Department of Corrections under FLA. STAT. § 947.1405's "conditional release program." *See* Certificate of Conditional Release [ECF No. 10-5] at 3. Hebert was to remain under supervision until December 9, 2022, and—as a condition of his release—he agreed to (among other things) "secure the permission of [his] conditional release supervisor before . . . leav[ing] the county of [his] residence" and to "obey all laws, ordinances and statutory conditions of conditional release." *Id.* at 3–4. Hebert acknowledged and, by his signature, agreed to these conditions on December 3, 2019—a week before his release. *See id.* at 1–7.

On October 12, 2022, the Commission issued a warrant for Hebert's arrest. *See* Warrant for Retaking Conditional Releasee [ECF No. 10-6] at 3. The Commission alleged that Hebert left his residence in Broward County, Florida, to travel to Volusia County, Florida, without "securing the consent of his Conditional Release Officer," and that, while in Volusia County, he violated the law by committing a felony battery on September 30, 2022. *Ibid.*; *see also* Arrest Affidavit [ECF No. 10-8] at 2–6 (describing the circumstances of Hebert's arrest for felony battery). On January 13, 2023, the Commission found that Hebert had "willfully violated a substantial condition(s)" of his conditional release, revoked Hebert's conditional release (effective as of the day of his arrest on September 30, 2022), and remanded him into the custody of the Florida Department of Corrections. *See* Revocation of Conditional Release [ECF No. 10-7] at 2. Importantly, the Commission also agreed *not* to award Hebert any credit for the time he'd served on conditional release. *See ibid.* ("The award of credit for time on Conditional Release was considered but denied by a majority vote of the Commission.").

On May 16, 2023,[1] Hebert filed a petition for writ of habeas corpus in Florida's Third DCA. *See* State Petition [ECF No. 10-9] at 2. In that petition, Hebert argued that FLA. STAT. § 947.141(6)—the provision of Florida law that allowed the Commission to revoke the gain time he'd previously earned—is "unlawful and unconstitutional . . . in that[ ] it divests the court of its lawful authority to determine the length of sentence, deprives individuals subject to its administration of adequate due process of law, and subjects those found in violation of a term or condition of conditional release supervision to being twice or more time[s] put in jeopardy for the same offense." *Id.* at 9 (errors in original). On November 7, 2023, the Third DCA denied the petition without explanation. *See* Order Denying State Petition [ECF No. 10-12] at 2 ("Upon consideration of the pro se Petition for Writ of Habeas Corpus, and the Response and Reply thereto, it is ordered that said Petition is hereby denied."). Hebert timely filed this Petition on January 5, 2024. *See* Petition at 1.[2]

## THE LAW

### I. The Antiterrorism and Effective Death Penalty Act ("AEDPA")

AEDPA instructs district courts to deny any claim that was "adjudicated on the merits" in a state-court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (summarizing 28 U.S.C. § 2254(d)–(e)). To have "adjudicated [the claim] on the

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).
[2] The Respondent concedes that the Petition was filed "within the 1-year period of limitation from the revocation of his Conditional Release[.]" Response [ECF No. 9] at 4. And we respect that concession. *See Day v. McDonough*, 547 U.S. 198, 210 n.11 (2006) ("[S]hould a State intelligently choose to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice.").

merits," the state court need not have issued any kind of formal opinion or even outlined its reasoning. *Id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Rather, when a state court doesn't articulate its reasons for the denial, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be "contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).

For "a state court's application of [Supreme Court] precedent" to be "'unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (cleaned up). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Richter*, 562 U.S. at 101. "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

4

Section 2254(d) similarly prohibits federal judges from reevaluating a state court's factual findings unless those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To establish that a state court's factual findings were unreasonable, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155–56 (quoting 28 U.S.C. § 2254(e)(1)). "[E]ven if a petitioner successfully carries his burden under § 2254(e)(1)—showing by clear and convincing evidence that a particular state-court factual determination was wrong—he does not necessarily meet his burden under § 2254(d)(2): Even if the state court made a clearly erroneous factual determination, that doesn't necessarily mean the state court's 'decision' was 'based on' an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) (en banc) (quoting 28 U.S.C. § 2254(d)(2)). Indeed, habeas relief is not warranted "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an unreasonable determination of the facts and isn't based on any such determination." *Ibid.* (cleaned up).

"AEDPA's standard is intentionally difficult to meet." *Woods*, 575 U.S. at 315 (cleaned up). When reviewing state criminal convictions on collateral review, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 316 (cleaned up).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* harmless-error standard requires habeas petitioners

5

to prove that they suffered "actual prejudice." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012). As the Supreme Court recently explained, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it didn't eliminate *Brecht*'s actual-prejudice requirement. *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must satisfy *Brecht*, even if AEDPA applies. *See id.* at 1526 ("[O]ur equitable precedents remain applicable 'whether or not' AEDPA applies." (citing *Fry v. Pliler*, 551 U.S. 112, 121 (2007)). In short, a "federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests." *Id.* at 1524 (emphasis in original); *see also Mansfield*, 679 F.3d at 1307 ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

## II. AEDPA's Procedural Requirements

"[A] person in custody pursuant to the judgment of a State court" has one year to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D). But this limitations defense is waivable. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020) (explaining that the State may express its intent to "waive the limitations bar").

Beyond meeting this one-year window, though, federal habeas petitioners must also *exhaust* their claims by "*properly* present[ing] [them] to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis in original). Specifically, federal habeas petitioners must "fairly present every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral review." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up). "If a petitioner fail[ed] to 'properly' present his claim to the state court—by exhausting his claim[ ] and complying with the applicable state procedure—prior to bringing his federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim." *Ibid.* In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan*, 526 U.S. at 848.

There are, to be sure, two exceptions to the general rule that a federal court may not consider a procedurally defaulted claim on the merits: "cause and prejudice" and "actual innocence." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default. We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense."). A habeas petitioner can establish "cause and prejudice" if (1) "some objective factor external to the defense impeded the effort to raise the claim properly in the state court," and (2) "there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017). "Actual innocence," on the other hand, "applies to a severely confined category: cases in which new evidence

7

shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The petitioner bears the burden of establishing that one of these exceptions to the procedural-default rule applies. *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence[.]" (cleaned up)).

All that said, "[s]tates can waive procedural bar defenses in federal habeas proceedings, including exhaustion." *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) (cleaned up)). But "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, *expressly* waives the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added); *see also McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) (same).

## ANALYSIS

Hebert alleges that certain parts of Florida's conditional-release statute are unconstitutional. He first contends that conditional release violates the Due Process Clause of the Fourteenth Amendment because it illegally "extends a prisoner's sentence beyond what would otherwise normally be required of them, while subjecting the individual . . . to broad and, in some instances, very invasive infringements upon their civil liberties." Petition at 6. He then argues that the Florida Commission on Offender Review's authority to revoke the gain-time of a releasee who violates the terms of his conditional release violates the Constitution's Double Jeopardy Clause because "it allows the Florida Parole Commission of Offender Review to extend an individuals sentence beyond that adjudicated by the court by failing to include a provision limiting the amount of gain-time that can be forfeited to the amount that actually exists at the time a conditional release violation occurs." *Id.* at 7–8 (errors in original). The Respondent counters that the Florida Supreme Court has repeatedly upheld the

8

constitutionality of the conditional-release program, and (it adds) these state-court decisions are consistent with clearly established federal law. *See* Response at 6.[3]

The conditional-release program, the Florida Supreme Court has explained, serves as "an additional post-prison supervision program for certain types of offenders that the legislature has determined to be in need of further supervision after release." *Rivera v. Singletary*, 707 So. 2d 326, 327 (Fla. 1998) (citing FLA. STAT. § 947.1405). The conditional-release statute—which applies to "habitual offenders," "violent career criminals," "sexual predators," and other violent and/or recidivist prisoners—provides that, "upon reaching the tentative release date or provisional release date[,] . . . [the prisoner] shall be released under supervision to specified terms and conditions[.]" FLA. STAT. § 947.1405(2)(c). "Prior to enactment of [the conditional-release] statute, when an inmate was released from state custody before the end of the pronounced prison term based upon the application of 'gain time,' the sentence simply expired and the prisoner was considered to have completed his or her sentence in full." *Logan v. State*, 964 So. 2d 209, 210 (Fla. 5th DCA 2007). Now, however, if a prisoner "meet[s] the statutory conditional release criteria," he is "released to community supervision for a period equal to the amount of gain time earned while incarcerated." *Ibid.* The Florida Supreme Court has analogized conditional release to parole since both programs allow for "the placement of an inmate on supervision after a period of time incarcerated[.]" *Duncan v. Moore*, 754 So. 2d 708, 711 (Fla. 2000) (citing *Morrissey v. Brewer*, 408 U.S. 471, 475 (1972)); *see also Suggs v. Fla. Parole Comm'n*, 2015 WL 164991, at *8 (S.D. Fla. Jan. 13, 2015) (Gayles, J.) (explaining that conditional release is a "supervised release program[ ] like parole and control release" (citing *Rivera*, 707 So. 2d at 327)).

---

[3] Because the Respondent agrees that Hebert has "exhausted his state court remedies" and his "administrative remedies," Response at 4, we proceed to the Petition's merits, *see Vazquez*, 827 F.3d at 866 ("States can waive procedural bar defenses in federal habeas proceedings, including exhaustion." (cleaned up)).

The length of a prisoner's conditional release is equal to the amount of gain-time he accrued before his release from prison. *See Evans v. Singletary*, 737 So. 2d 505, 507 (Fla. 1999) ("[Conditional releasees] are placed on supervision for the amount of time equal to the gain time they have accrued."). If a conditional releasee violates "their supervision, gain time is forfeited and the inmate is returned to prison to continue serving the sentence(s)." *Ibid.* (citing FLA. STAT. § 947.1405(2)); *see also Logan*, 964 So. 2d at 210 ("If [releasees] violate a condition of release prior to the expiration of their full, pronounced prison term, gain time and release are revoked and they may be re-incarcerated for the balance of their sentence.").[4] As the Respondent explains, the Florida Supreme Court has repeatedly affirmed the constitutionality of this scheme. *See* Response at 6. For example, in *Duncan v. Moore*, 754 So. 2d 708 (Fla. 2000), the high court relied on the U.S. Supreme Court's decision in *Morrissey* to hold that, "if the releasee violates his or her supervision, the releasee may be returned to prison to finish serving the releasee's original sentence" *without* violating the Double Jeopardy Clause. *See id.* at 711 (citing *Morrissey*, 408 U.S. at 478). The *Duncan* Court also concluded that conditional release didn't violate the Due Process Clause because "the State will have to prove that [the releasee] did indeed violate his supervision before it can revoke his release and forfeit his gain-time." *Id.* at 712.[5]

---

[4] The conditional-release program is managed by two Florida agencies. The Florida Department of Corrections is required "to provide intensive supervision by experienced correctional probation officers to conditional release offenders." FLA. STAT. § 947.1405(8). And the Florida Commission on Offender Review, after receiving "the recommendations of the [Department of Corrections]," *both* "establish[es] the terms and conditions of the conditional release" *and* decides "whether the terms and conditions of such release have been violated and whether such violation warrants revocation of the conditional release." *Id.* §§ 947.1405(2)(c), (6). If the releasee is "ordered to be returned to prison," the Commission must then determine if, "by reason of the misconduct, [the releasee has] forfeited all gain-time or commutation of time for good conduct[.]" *Id.* § 947.141(6).

[5] Hebert argues that *Duncan* and other Florida Supreme Court cases affirming the constitutionality of conditional release "conflict" with the Florida Supreme Court's decision in *State v. Green*, 547 So. 2d 925 (Fla. 1989). *See* Petition at 10. But that's not true. As the Florida Supreme Court has explained, *Green* is no longer good law because the Florida Legislature amended the relevant statute, effective October 1, 1989, to authorize the Commission to revoke the gain-time of "inmates who violate[d] other types of supervision such as control release or conditional release." *Dowdy v. Singletary*, 704 So. 2d 1052, 1054 (Fla. 1998); *see also Gibson v. Fla. Dep't of Corr.*, 885 So. 2d 376, 380 n.5 (Fla. 2004) ("In 1989, revocation of probation or community control was added to the circumstances contained in

Under AEDPA's extremely deferential standard of review, we can only grant Hebert's application for a writ of habeas corpus if the highest state court to consider his claim rendered a decision "that was contrary to, or involved an unreasonable application of, clearly established Federal law[.]" 28 U.S.C. § 2254(d)(1). Because the Third DCA summarily denied Hebert's claim without explanation, *see* Order Denying State Petition [ECF No. 10-12] at 2, we must "review the record before the [Third DCA] to 'determine what arguments or theories supported . . . or could have supported, the state court's decision'" and whether there was any "reasonable basis" for the Third DCA to deny relief. *Hittson v. GDCP Warden*, 759 F.3d 1210, 1232–33 (11th Cir. 2014) (quoting *Richter*, 562 U.S. at 102). "To help us make this assessment, the Supreme Court has told us to consider issues 'that were briefed or argued to the state appellate court.'" *Ravelo v. Dixon*, 2023 WL 2837072, at *13 (S.D. Fla. Apr. 7, 2023) (Altman, J.) (quoting *Wilson*, 138 S. Ct. at 1192 (cleaned up)). Having reviewed the arguments Hebert and the State advanced before the Third DCA, we find that the only plausible basis for the Third DCA's denial of Hebert's state-court habeas petition is the Florida Supreme Court's determination that the conditional-release program is constitutional. *See* State's Answer Brief [ECF No. 10-10] at 12 ("Thus, it is well recognized that Conditional Release is a lawful program, and it has been lawfully applied to Petitioner." (citing *Duncan*, 754 So. 2d at 712)). Hebert, in other words, can prevail here only if it was "unreasonable" for the Third DCA to rely on the Florida Supreme Court's decisions affirming the constitutionality of Florida's conditional-release statute.

But, because Florida's state courts have reasonably concluded that conditional release is constitutional, it was equally reasonable for the Third DCA to deny Hebert's state-court petition on that basis. In *Rodriguez v. Florida Parole Commission*, 430 F. App'x 768 (11th Cir. 2011), the Eleventh

---

section 944.28(1) that authorize the DOC to forfeit an offender's gain time. The 1989 legislation superseded *State v. Green*, 547 So. 2d 925 (Fla.1989), in which this Court held that under a previous version of section 944.28(1), credit both for time actually served and for gain time must be granted against a sentence imposed upon revocation of the probationary portion of a split sentence.").

11

Circuit "addressed the issues raised by the Petitioner[.]" Response at 8. Like Hebert, the petitioner in *Rodriguez* challenged the Florida Commission on Offender Review's (previously known as the Florida Parole Commission) decision to "revoke[ ] all of Rodriguez's accrued gain time"—even the "credit for the time that he spent out of prison on conditional release"—after Rodriguez violated the terms of his release. 430 F. App'x at 769. As Hebert does here, Rodriguez argued that the revocation of all his gain-time violated the Due Process and Double Jeopardy Clauses because it effectively extended the amount of time he spent in state custody. *Compare ibid.* ("Rodriguez argues that this constituted an improper administrative extension of his judicially-imposed sentence in violation of due process and double jeopardy principles."), *with* Petition at 20 ("Petitioner was sentenced to twenty years in the custody of the Florida [D]epartment of Corrections. However, Petitioner has now been in the custody of the Florida Department of Corrections for twenty one years and counting. . . . Petitioner's sentence will be unlawfully extended by a period of three years or more.").

The Eleventh Circuit rejected this argument. Relying on the former Fifth Circuit's decision in *Clark v. Blackwell*, 374 F.2d 952 (5th Cir. 1967),[6] the *Rodriguez* Court (like the Florida Supreme Court in *Duncan*) determined that conditional release was comparable to parole, that "the time spent on parole shall not diminish the sentence where a prisoner has violated his parole and is required to serve the remainder of his sentence," and that a revocation of the "time spent on parole" did not violate double jeopardy. *Rodriguez*, 430 F. App'x at 770 (quoting *Clark*, 374 F.2d at 953); *see also Swicegood v. U.S. Parole Comm'n*, 755 F.2d 880, 881 (11th Cir. 1985) ("Petitioner, however, because of his parole violation, forfeited any good time credit for time served prior to revocation."). The Eleventh Circuit also "rejected the argument that it violates due process principles to require a parole violator to serve the remaining time on his sentence, even if that causes the prisoner's 'incarceration to extend past the

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

12

final expiration of the maximum sentence as established at the time of imposition.'" *Rodriguez*, 430 F. App'x at 770 (cleaned up) (quoting *Sturgis v. United States*, 419 F.2d 390, 390 (5th Cir. 1969)).

Hebert's argument has also been considered—and uniformly rejected—by federal district courts throughout Florida. *See, e.g.*, *Drago v. Sec'y, Dep't of Corr.*, 2022 WL 486168, at *6, *9 (M.D. Fla. Feb. 17, 2022) (Scriven, J.) (rejecting argument that conditional release "arbitrarily extended [petitioner's] maximum sentence expiration date in violation of the Fifth Amendment and the Fourteenth Amendment" and that it "violate[d] double jeopardy"); *Gaines v. Fla. Comm'n on Offender Review*, 2018 WL 1521898, at *1 (N.D. Fla. Mar. 28, 2018) (Hinkle, J.) ("There is nothing inherently unconstitutional about a state conditional-release program of this kind. A state could choose to require a 30-year sentence to be served all at once, with no break, but a state also could choose, as Florida has done, to release a defendant meeting specified criteria early, on the understanding that, if the defendant commits a new offense, the defendant will have to serve the rest of the sentence. A state could choose to provide gain time for prisoners whose contact warrants it and to vest the gain time once earned, precluding later forfeiture, but a state also could choose, as Florida has done, to provide gain time but to make it subject to forfeiture if the defendant commits a new offense."), *aff'd sub nom.*, *Gaines v. Att'y Gen., Fla.*, 788 F. App'x 623 (11th Cir. 2019); *Haralson v. Fla. Parole Comm'n*, 2006 WL 2331029, at *1 (N.D. Fla. Aug. 8, 2006) (Paul, J.) ("Conditional release is merely an aspect of executive clemency completely within the discretion of the state officials; there is no bargain struck with the prisoner and no federal constitutional right associated with conditional release. Thus, all of petitioner's claims based on the due process clause are without merit."). Relying on the overwhelming weight of these precedents, the Third DCA reasonably concluded that the revocation of *all* of Hebert's gain-time was constitutional.[7]

---

[7] It's true that the Commission *can* violate a releasee's constitutional rights if the revocation hearing itself doesn't comport with the "minimum requirements of due process," such as when the releasee doesn't receive "written notice" or when he is refused the "opportunity to be heard in person and to

Resisting this conclusion, Hebert presents a mishmash of legal arguments that can be distilled into two general points: (1) that conditional release *isn't* "akin to probation or parole" because it's "punitive in both form and function," Petition at 12; and (2) that, because of the punitive nature of conditional release—which subjects the releasee to "a number of additional infringements upon his civil liberties"—it was unconstitutional for the Commission to revoke the gain-time he'd earned *while he was on* conditional release, *id.* at 14; *see also* Reply to State's Response to Show Cause Order ("Reply") [ECF No. 14] at 4 ("Condition[al] release, as it exists in Florida, is a punitive and discriminatory measure used against a select group of individuals who are deemed at risk.").[8]

But the central premise of this argument—that conditional release is constitutionally distinct from parole—is mistaken. As the Supreme Court explained in *Morrissey*, parole "is an established variation on imprisonment of convicted criminals. Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed[.]" 408 U.S. at 477. But parole, the Court clarified, is *not* a no-strings-attached proposition because "those who are allowed to leave prison early are subjected to specified conditions for the duration of their terms." *Id.* at 478. "If a parolee is returned to prison, he usually receives *no*

---

present witnesses and documentary evidence[.]" *Morrissey*, 408 U.S. at 489; *see also, e.g.*, *Collins v. Hendrickson*, 371 F. Supp. 2d 1326, 1328 (M.D. Fla. 2005) (Whittemore, J.) (granting habeas relief where the Commission illegally "disregard[ed] a hearing examiner's factual findings" (citing *Tedder v. Fla. Parole Comm'n*, 842 So. 2d 1022, 1025–26 (Fla. 1st DCA 2003))). But, since Hebert only challenges the constitutionality of the conditional-release statute itself, we needn't consider whether his revocation hearing was conducted in a constitutional manner. *See generally* Petition; *see also United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court sua sponte [only] in extraordinary circumstances."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived.").

[8] In making this argument, Hebert appears to concede that the Commission had the authority to revoke the gain-time he'd earned *before his release*—even as he disputes its authority to revoke the gain-time he'd earned *during* his release. *See* Petition at 19 ("The Petitioner would argue further that while I . . . may not have a vested liberty interest in gain-time, I most certainly have a vested liberty interest in the time I served on my sentence while on Conditional Release.").

*credit for the time 'served' on parole." Id.* at 480 (emphasis added). As the Florida Supreme Court found in *Duncan* (and as the Eleventh Circuit reiterated in *Rodriguez*), Florida's conditional-release program shares these same characteristics. *See Duncan*, 754 So. 2d at 711 ("It has long been accepted that the placement of an inmate on supervision after a period of time incarcerated is a legitimate form of punishment for crime. Also accepted has been the notion that if the releasee violates his or her supervision, the releasee may be returned to prison to finish serving the releasee's original sentence." (citing *Morrissey*, 408 U.S. at 475, 478)); *Rodriguez*, 430 F. App'x at 770 ("While we have never decided whether a state Parole Commission's denial of credit for the time an inmate spent on conditional release violates federal law, we have rejected this argument in the context of federal parole. . . . Based on this binding precedent, we reject Rodriguez's due process and double jeopardy claims." (cleaned up)).

Since Florida's conditional-release program functions as a kind of parole-like supervision, the Commission's decision to revoke the gain-time Hebert earned while he was on release didn't violate the Constitution. *See Lambert v. Warden, U.S. Penitentiary*, 591 F.2d 4, 8 (5th Cir. 1979) ("[The parole board had] the authority to forfeit the appellant's good-time credit as well as credit for time spent on conditional release."); *Garcia v. United States*, 769 F.2d 697, 699 n.1 (11th Cir. 1985) ("When an individual is found to be in violation of the special parole, the violator can be returned to prison to serve the entire term of the special parole without being given credit for the period spent on parole."). The Third DCA thus reasonably applied federal law when it affirmed the Commission's authority to revoke *all* of Hebert's gain-time time after he violated the terms of his conditional release.

### EVIDENTIARY HEARING

We won't hold an evidentiary hearing in this case. "[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474

15

(2007)). Based on what we've said—including and especially the presence of a robust trial and state-postconviction record—we don't think we'd benefit from any further factual development here.

### CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Jurists of reason wouldn't debate our assessment of Hebert's constitutional claim, so we'll **DENY** any request for a COA.

\* \* \*

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Petition [ECF No. 1] is **DENIED**, that a COA is **DENIED**, that any request for an evidentiary hearing is **DENIED**, that all deadlines are **TERMINATED**, and that any pending motions are **DENIED** as moot. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida, on March 25, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Mark Hebert, *pro se*
counsel of record